## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| MANITEX INTERNATIONAL, INC., | |
| *Plaintiff*, | No. 3:20-cv-1037 (MPS) |
| v. | |
| PARIMAL, | |
| *Defendant*. | |

## RULING ON MOTION TO REMAND

### I.        Background

On July 9, 2020, Plaintiff Manitex International, LLC ("Manitex") brought this action in state court against the Defendant, an individual whose only name is Parimal.  ECF No. 1-1 at 2. Manitex sought to recover the sum of $60,000 from Parimal based on breach of contract and unjust enrichment claims.  *Id.* at 3-4.  Parimal removed the case on July 23, 2020, citing diversity jurisdiction, providing notice of a related case (*Parimal v. Manitex International, Inc.*, 3:19-cv-01910-MPS) (the "separate federal action"), and asserting that Manitex's allegations in this action are compulsory counterclaims to the separate federal action and were improperly asserted in state court.  ECF No. 1 at 1-2.

In the Notice of Removal, Parimal states that removal is timely under 28 U.S.C. § 1446(b)(1) because service was effectuated on July 20, 2020 (within the statutory 30-day period), that complete diversity exists between the parties because Manitex is a citizen of Illinois and Parimal is a citizen of Connecticut, and that the separate federal action "involve[es] the subject

matter of the removed claims which clearly reflects that the jurisdictional threshold matter is met." ECF No. 1 at 2.

On July 30, 2020, Manitex filed a motion to remand this case to Connecticut Superior Court on the grounds that the amount in controversy does not meet the $75,000 threshold required for diversity jurisdiction and that Parimal is a "forum defendant" and precluded by statute from removing this case. ECF No. 11; *see* 28 U.S.C. § 1441(b)(2) (diversity jurisdiction case "may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought."). After considering the parties' memoranda, ECF Nos. 11, 13-15, and the supporting exhibits, I find that the case does not meet the amount-in-controversy requirement and grant the motion to remand (ECF No. 11) for the reasons set forth below.

## II.    Legal Standard

"In evaluating the propriety of a removal, courts start with the baseline principle that federal courts are courts of limited jurisdiction." *Veneruso v. Mount Vernon Neighborhood Health Center*, 933 F. Supp. 2d 613, 618 (S.D.N.Y. 2013) (citing *Keene Corp. v. United States*, 508 U.S. 200, 207 (1993)). Thus, "removal jurisdiction exists in a given case only when that jurisdiction is expressly conferred on the courts by Congress." *Id.* (internal quotation marks omitted). "Under 28 U.S.C. § 1441, a civil action filed in state court may be removed by the defendant to federal district court if the district court has original subject matter jurisdiction over the plaintiff's claim." *Lupo v. Human Affairs Intern., Inc.*, 28 F.3d 269, 271 (2d Cir. 1994); *see also* 28 U.S.C. § 1441(a) ("Except as otherwise expressly provided by Act of Congress, any civil action brought in a state court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending."). "[T]he party asserting jurisdiction

bears the burden of proving that the case is properly in federal court . . . ." *United Food & Comm. Workers Union, Local 919, AFL-CIO v. CenterMark Props. Meriden Square, Inc.*, 30 F.3d 298, 301 (2d Cir. 1994). Because "statutory procedures for removal are to be strictly construed," courts "resolv[e] any doubts against removability." *In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, 488 F.3d 112, 124 (2d Cir. 2007) (brackets in original).

"Federal courts have original jurisdiction over civil actions in which [diversity jurisdiction exists]." *MBIA Ins. Corp. v. Royal Bank of Canada*, 706 F. Supp. 2d 380, 385 (S.D.N.Y. 2009). "Diversity jurisdiction exists over 'civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States.'" *Hallingby v. Hallingby*, 574 F.3d 51, 56 (2d Cir. 2009) (quoting 28 U.S.C. § 1332(a)(1)). Where "the jurisdictional amount is not clearly alleged in the plaintiff's complaint, and the defendant's notice of removal fails to allege facts adequate to establish that the amount in controversy exceeds the jurisdictional amount, federal courts lack diversity jurisdiction as a basis for removing the plaintiff's action from state court." *Lupo*, 28 F.3d at 273-74. "Citizens of different States means that there must be complete diversity, *i.e.*, that each plaintiff's citizenship must be different from the citizenship of each defendant." *Hallingby*, 574 F.3d at 56 (internal quotation marks omitted).

## III.    Discussion

### A.    Diversity Jurisdiction

In this case, it is clear that the amount-in-controversy requirement is not satisfied, because the parties agree that the amount in controversy in the state action is $60,000, plus costs and interest. ECF No. 11 at 1; ECF No. 13 at 5. On its face, this is insufficient to meet the $75,000 threshold required for diversity jurisdiction under 28 U.S.C. § 1332(a), which excludes costs and interest for the purpose of determining the amount in controversy. As a result, Parimal has failed

to carry his burden to establish removal jurisdiction on diversity grounds and this case must be remanded for lack of subject matter jurisdiction.[1]

*Compulsory Counterclaim*

The parties' briefs appear to assume that it should matter to the jurisdictional issue whether the claims asserted in this action are compulsory counterclaims to the separate federal action (3:19-cv-1910-MPS). They cite no authority to support such an assumption, and I am unaware of any. First, however, I agree with Parimal that the claims asserted in this action are compulsory counterclaims in the separate federal action, 19cv1910. That much is clear from the the two letter agreements attached to Parimal's sur-reply. The first letter, dated August 17, 2018, sets forth an offer of employment by Manitex to Parimal, including salary and bonus terms and other benefits. ECF No. 15-3 at 2-3. The August 2018 letter states, in part, as follows: "You shall be based in Georgetown, Texas and the Company [i.e., Manitex] shall pay your reasonable relocation expenses to Texas . . . . As part of your relocation expenses, the Company shall bear a normal brokerage fee in connection with the sale of your existing residence, buydown of mortgage rates, and travel costs to Texas . . . . The relocation costs (excluding the Brokerage fee and transportation of goods and services) shall not exceed $60,000." ECF No. 15-3 at 2. The August 2018 letter is referred to in the operative complaint in the separate federal action, and one of the claims in that case alleges a breach of the agreement set forth in that letter. 19cv1910, ECF No. 23 ¶¶ 16, 34-36. The second letter, which is undated and which is the subject of this action, states as follows: "This will acknowledge your request that we advance to you the amount of $120,000 representing the sum of (1) your relocation costs . . . (2) the Brokerage fee . . . . We are willing to advance this amount to you with the understanding that in the event the actual costs referred to above[] do not total

---

[1] As a result, I need not address Manitex's argument concerning the forum defendant rule.

$120,000, you will promptly return to the Company the difference between the $120,000 and the actual amount of such costs." ECF No. 15-2 at 1. As Parimal notes, the second letter uses the same defined terms set forth in the August 17, 2018 letter. I agree with Parimal that the claims based on these two letters "arise out of the [same] transaction or occurrence," Fed. R. Civ. P. 13(a)(1)(A).

Indeed, it is not clear what the rationale or the contractual consideration would be for the second letter agreement if it was not part of the larger transaction involving the formation and execution of the agreement set forth in the August 2018 letter, which is the subject of the separate federal action. As Parimal puts it, why would Manitex be advancing him money for relocation expenses if not as part of an employment offer? Manitex asserts that the second letter agreement was not entered into until six months after the August 2018 letter agreement and, unlike the August 2018 letter agreement, includes a specific repayment obligation. These are minor distinguishing features, however, and do not prevent the two letters from having a "logical relationship" to each other such that claims based on them can and should economically be resolved in the same lawsuit. *See Jones v. Ford Motor Credit Co.*, 358 F.3d 205, 209 (2d Cir. 2004) (compulsory counterclaim standard of Rule 13(a) met "when there is a logical relationship between the counterclaim and the main claim. Although the logical relationship test does not require an absolute identity of factual backgrounds, the essential facts of the claims must be so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit." (internal quotation marks, citation, and alterations omitted)); *United States v. Aquavella*, 615 F.2d 12, 22 (2d Cir. 1979) ("In determining whether a claim arises out of the transaction that is the subject matter of the opposing party's claim [under Rule 13(a)], this Circuit has taken a broad view, not requiring an absolute identity of factual backgrounds but only a logical relationship between

them." (internal alterations omitted)).  Under the "broad view" taken in the Second Circuit, the claims asserted by Manitex in this action are compulsory counterclaims in the separate federal action.

### *Jurisdiction*

Neither party addresses, however, how a state law claim's qualification as a compulsory counterclaim in an existing federal action provides an independent source of original federal jurisdiction where that claim is asserted separately in a state court action.  I am aware of no legal authority supporting such a notion, and neither party cites any.  Neither supplemental nor ancillary jurisdiction can provide the "original jurisdiction" required for removal under section 1441(b). *See Syngenta Crop Protection, Inc. v. Henson*, 537 U.S. 28, 34 (2002) ("Ancillary jurisdiction . . . cannot provide the original jurisdiction that . . . must [be] show[n] in order to qualify for removal under § 1441."); *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1187 (2d Cir. 1996) ("[T]he district court . . . cannot exercise supplemental jurisdiction unless there is first a proper basis for original federal jurisdiction."); *Port Auth. of New York and New Jersey v. Allianz Ins. Co.*, 443 F. Supp. 2d 548, 555 (S.D.N.Y. 2006) ("[R]egardless of whether this court could resolve the . . . question posed by the plaintiffs' complaint through supplemental jurisdiction in [a related case], supplemental jurisdiction cannot supply the original jurisdiction needed to remove a state court complaint under 28 U.S.C. § 1441(a) — 'even if the action which a defendant seeks to remove is related to another action over which the federal district court already has subject-matter jurisdiction, and even if removal would be efficient.'" (citing *Ahearn v. Charter Township of Bloomfield*, 100 F.3d 451, 456 (6th Cir.1996)); *see also* 14C Joan E. Steinman et al., *Removal Based on Federal-Question Jurisdiction*, Fed. Prac. & Proc. Juris. § 3722 (Rev. 4th ed.) ("Defendants sometimes will assert that a pending federal action that shares a common nucleus of

operative fact with the state lawsuit that the defendants seek to remove can furnish an anchor claim under Section 1367(a), and thus enable removal of a separate suit under Sections 1441(a) and (b). This is a misreading of Section 1367. . . .").

Further, even if Manitex were to assert its claim in this action as a compulsory counterclaim in the separate federal action, the value of that claim would *still not* count for the purpose of determining the amount in controversy necessary for diversity jurisdiction. In the Second Circuit, "the amount in controversy is calculated from the plaintiff's standpoint," *Correspondent Services Corp. v. First Equities Corp. of Florida*, 442 F.3d 767, 769 (2d Cir. 2006), and several district courts within the Second Circuit have refused to aggregate the value of a defendant's counterclaim with the value of the plaintiff's claims to attempt to meet the $75,000 jurisdictional threshold on this basis. *See Erdheim v. Harris*, No. 18 CIV. 8601 (LGS), 2019 WL 3219385 *4 (S.D.N.Y. July 17, 2019); *Carling v. Peters*, No. 10 CIV. 4573 PAE HBP, 2013 WL 865842 *8 (S.D.N.Y. Mar. 8, 2013) (noting that "courts in [the Second] Circuit have reached a consensus that, in the *removal* context, compulsory counterclaims may not be used to satisfy the amount in controversy requirement." (emphasis in original)). To be sure, the $75,000 amount-in-controversy requirement is already met in the separate federal action, *see* ECF No. 13 at 3; ECF No. 14 at 2 n.2, and, thus, this Court would have supplemental jurisdiction were Manitex to assert its claims in this action as counterclaims in the federal action. But that has no bearing on whether this action, originally filed in state court, meets the requirements for removal jurisdiction on diversity grounds on its own, as it must. I am aware of no basis to conclude that it does, and I thus must remand this case to the Connecticut Superior Court.

Nevertheless, I note that litigating what is essentially a single dispute in two different courts is inefficient and defeats the purpose of the compulsory counterclaim rule. Further, the party who

neglects that rule does so at his or her peril: A failure to assert a compulsory counterclaim will bar a subsequent action (even a pending action) by operation of res judicata once the case in which the counterclaim should have been brought proceeds to judgment. *See generally* 6 Arthur R. Miller et al., *Compulsory Counterclaims—Effect of Failing to Plead a Compulsory Counterclaim*, Fed. Prac. & Proc. Civ. § 1417 (3d ed.) ("A failure to plead a compulsory counterclaim bars a party from bringing a later independent action on that claim."). To avoid the inefficiency of litigating in two fora claims that are part of the same overall dispute, I would consider enjoining the parties from proceeding with this action after it is remanded, but the Anti-Injunction Act, 28 U.S.C. § 2283, prohibits me from doing so, even though a compulsory counterclaim is involved. *See id.* § 1418; *see also Reines Distributors, Inc. v. Admiral Corp.*, 182 F. Supp. 226, 230 (S.D.N.Y. 1960). Nonetheless, nothing stops the state court from staying this action after remand "in order to effectuate the general policy in both state and federal courts against multiplicity of litigation." Miller et al., Fed. Prac. & Proc. Civ. § 1418.

Thus, in remanding this case to state court, I request that the state court consider staying the action pending the resolution of the separate federal action, 3:19-cv-01910. Doing so would not prejudice Manitex. Because the Court has not yet ruled on a pending partial motion to dismiss in the separate federal action, Manitex has not yet had to file an answer in that action, and so it still has every opportunity to assert the claims set forth in this action as counterclaims in the separate federal action. As noted, should it fail to do so, it runs the risk that it will be barred altogether from proceeding with the claims in this action if the separate federal action goes to judgment first.

## B.    Costs and Fees

The plaintiff also requests an award of its "costs and expenses (including attorney's fees) pursuant to 28 U.S.C. § 1447(c)", ECF No. 1-1 at 4-5. Although I conclude that the case must be

remanded, I exercise my discretion to decline to award fees and costs, because, as should be clear from the discussion above, Parimal's attempt to remove the case appears to have been motivated at least in part by reasonable considerations of judicial economy.[2]

## IV.   Conclusion

For the reasons discussed above, the motion to remand (ECF No. 11) is hereby GRANTED. Manitex's request for costs and fees under 28 U.S.C. § 1447(c) is DENIED.

IT IS SO ORDERED.

_____
/s/
Michael P. Shea, U.S.D.J.

Dated: Hartford, Connecticut
      January 22, 2021

---

[2] I similarly decline Parimal's request that I order Manitex to pay his fees and costs.